# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY RECTOR,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | 1:10cv02077 AWI DLB<br><br>FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Emily Rector ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying in part her application for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for Findings and Recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications in July 2001 and May 2002, alleging disability since August 1, 2000, due to physical and mental problems. AR 84-86, 547-554, 717. The

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

applications were denied and Plaintiff filed an action with this Court. AR 715. On July 15, 2005, the Court granted the parties' stipulation to remand the action. On remand, the Administrative Law Judge ("ALJ") was directed to give further consideration to Plaintiff's mental limitations, obtain medical expert evidence, give specific reasons for rejecting or accepting the medical opinions and ask a Vocational Expert ("VE") to clarify the issue of transferable skills. AR 760-763.

On May 23, 2007, the ALJ issued a decision finding Plaintiff not disabled. AR 769-779. On September 24, 2007, the Appeals Council again remanded the action to the ALJ to obtain medical expert testimony regarding Plaintiff's mental limitations. AR 715, 830-831.

ALJ William C. Thompson held a hearing on April 1, 2009, and issued a partially favorable decision on June 23, 2009. AR 715-725. Specifically, ALJ Thompson found Plaintiff disabled as of June 1, 2007. AR   The Appeals Council denied review on September 9, 2010. AR 700-702.

Hearing Testimony

ALJ Thompson held a hearing on April 1, 2009, in Stockton, California. Plaintiff appeared with her attorney, Jeffrey Milam. Medical Expert Charles Agler, M.D., and VE Susan Moranda also appeared and testified. AR 1516.

Dr. Agler testified that he was a Medical Expert in psychiatry. AR 1520. He reviewed Plaintiff's medical records and opined that she had the medically determinable mental impairments of personality disorder, which over time has resulted in depression. AR 1520-1521. Dr. Agler believed that Plaintiff's affective disorder "equals the listing from some time prior to June 2007." AR 1521. He explained that it was very difficult to find an exact date because the records were inconsistent and mainly written by social workers. AR 1522. Dr. Agler noted that Plaintiff was hospitalized four times and on the first three, she was admitted with a very low GAF and discharged with significant improvement. On the fourth hospitalization, from June 2 to June 4, 2007, she was admitted with a GAF of 40 and discharged with a GAF of 40. Plaintiff did not show any improvement, which was unusual for her, so Dr. Agler used this hospitalization as a "marker of time when a combination of problems did equal a listing." AR 1522-1523. Based

on the most recent records, Dr. Agler believed that the impairment continued to meet the listing. AR 1523.  There were times in 2008 when Plaintiff did a bit better, but she was unable to maintain that improvement.  AR 1523.

The ALJ asked if there was evidence upon which Dr. Agler could conclude that Plaintiff's mental impairment met or equaled a listing prior to June 30, 2007.  He responded that he could not find anything in the record that clearly convinced him that Plaintiff's impairment met or equaled the listing prior to June 2007.  AR 1523-1524.

Plaintiff's attorney questioned Dr. Agler and asked him if her first three hospitalizations demonstrated a continuing drop in her capacity despite treatment.  Dr. Agler testified that these were acute situations and that her GAF promptly rose to something above 50.  AR 1524.  He testified that upon hospitalization, Plaintiff's GAF was at a "marginal level" but that this GAF "would not prevent some kind of simple SGA."  AR 1525.  Dr. Agler explained that for periods in between her hospitalizations, she was "functioning in a marginal manner that would not preclude SGA."  AR 1525.  Prior to June 2007, Dr. Agler believed that Plaintiff had at least a moderate limitation in her ability to maintain attention and concentration for extended periods. Although such a mental impairment is ordinarily consistent with "some form of SGA with limitations," Dr. Agler admitted that it might lead to a VE finding that no jobs exist.  AR 1539.

Plaintiff testified that in March 2008, she began seeing Dr. Voqui every three months for mental health treatment.  AR 1543.

For the first hypothetical, the ALJ asked the VE to assume an ability to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours and sit without restriction. This person was moderately limited in her ability to respond appropriately to supervisors, coworkers and the public and should not work in a work team or cooperative work process.  The VE testified that this person could not perform Plaintiff's past work.  AR 1546.

For the second hypothetical, the ALJ added an inability to perform more than simple, repetitive tasks.  The VE testified that this person could not perform Plaintiff's past work.  AR 1547.

For the third hypothetical, the ALJ asked the VE to assume the same physical limitations, with moderate limitations in the ability to (1) maintain attention and concentration for extended periods, (2) perform activities within a schedule and be punctual with work breaks, (3) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform work at a consistent pace without an unreasonable number and length of rest periods, and (4) sustain an ordinary routine without special supervision and to interact appropriately with coworkers and employees. This person would also have a significant (more than moderate) limitation in her ability to work in coordination with others without being distracted by them. The VE testified that this person could not perform any work. AR 1548-1549.

<u>Medical Record</u>

Plaintiff's argument focuses mainly on the evidence submitted to the Appeals Council and the Court will therefore summarize only this relevant evidence. Plaintiff also indicates that she does not contest Defendant's and/or the ALJ's summary of evidence.

The Appeals Council admitted the following into evidence:

1. A June 12, 2007, letter written to the Appeals Council by Anupinder Sahota, M.D., and Susan Gold, Ph.D. The letter was written as a rebuttal to the ALJ's May 23, 2007, findings and states that Plaintiff has been receiving treatment from Stanislaus County Behavioral Health since 2001. Dr. Sahota and Dr. Gold described her psychiatric disability as moderately severe and noted that her treatment plans from 2004 through 2006 have consistently listed her diagnosis as major depressive disorder, recurrent severe without psychotic features. The treatment notes also explain that she has not been transferred to a lower level of care in part because of the severity of her depression. In response to the ALJ's finding that there was significant time between her visits, the doctors explained that like most patients with moderately severe depression, the appointments are made every three months, with an appointment with an RN in the interim. They would like to refer Plaintiff to alternative treatment groups, but cannot do so because she does not have the funds to pay for such treatment. As to her prognosis, the doctors explain that it remains "fair to guarded." This prognosis is based on her age of 59 (though she appears much older), a marginal support system, a decline in her physical health,

severe economic hardship, endogenous-based depression with chronic suicidal ideation at times with plans, vegetative symptoms and general "refractory to a multitude of medications." Plaintiff did not appear capable of seeking, securing or sustaining any gainful employment presently, or in the future. AR 745-746.

2.   A questionnaire completed by Karin Forno, M.D., on August 17, 2009. Dr. Forno opines that Plaintiff's medical impairments precluded work at any exertional level. Her primary impairments were "osteoarthritis, tremor, severe hearing loss, major depression, psychosis." As objective findings, Dr. Forno lists tenderness in knee and toe joints, flat affect, vague communication, an obvious inability to hear normal conversation and coarse tremors in both hands. Plaintiff could sit for one hour at a time, for a total of three to four hours during an eight hour day. She could and stand and/or walk for 20 minutes at a time, for a total of one hour a day. Plaintiff would also need to lie down or elevate her legs for two hours in an eight hour day. She could not handle stress because of her depression and psychosis and could not deal with the public or coworkers because of her severe hearing loss. Dr. Forno believed that Plaintiff has had these impairments since June 2002. AR 707.

3.   An October 19, 2009, letter "To Whom it May Concern," written by Michael Smith, M.D. Dr. Smith wrote the letter on behalf of "Mr. Rector and his wife who continue under severe financial hardship, multiple psychiatric disorders, poor response to psychiatric medication and would appreciate any support you can provide on their behalf." AR 705.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, sleep apnea, degenerative disc disease, status post ankle fracture, status post left knee arthroscopy, osteoarthritis, anxiety disorder and affective disorder. Prior to June 1, 2007, Plaintiff's impairments did not meet or equal a listing and she retained the residual functional capacity ("RFC") to lift and carry 10 pounds frequently, 20 pounds occasionally, stand and walk for six hours, sit without restriction, understand, remember and carry out simple and detailed job instructions and tasks. Plaintiff was moderately limited in her ability to respond appropriately to supervisors, co-workers and the public and could not work in a work team or cooperative work

process. With this RFC and for the time prior to June 1, 2007, Plaintiff could perform her past relevant work as a data entry clerk and filing clerk. AR 717-722.[2]

Beginning on June 1, 2007, the medical evidence demonstrated that Plaintiff's affective disorder met the requirements of Listing 12.04 and she was therefore disabled as of that date. AR 723-724.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42

---

[2] The ALJ rejected the testimony of the current VE in favor of the testimony of the prior VE. AR 723. VE Guy Deaner, who testified at the January 29, 2003, hearing, found that Plaintiff could perform her past relevant work as a filing clerk and data entry clerk with more non-exertional limitations than the ALJ presently assessed. AR 723.

6

U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability and (2) has an impairment or a combination of impairments that is considered "severe" (diabetes mellitus, sleep apnea, degenerative disc disease, status post ankle fracture, status post left knee arthroscopy, osteoarthritis, anxiety disorder and affective disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b)). Prior to June 1, 2007, the ALJ determined at steps three and four that she did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4 and could perform her past relevant work. Beginning on June 1, 2007, the ALJ determined at step three that Plaintiff's affective disorder met Listing 12.04 and she was therefore disabled as of that date. AR 717-723.

Here, Plaintiff argues (1) that the Appeals Council failed to properly consider the medical evidence before it; and (2) that the ALJ did not properly assess the medical expert's testimony.

## **DISCUSSION**

A.     Review of Evidence by Appeals Council

Plaintiff's first argument addresses evidence that was submitted to the Appeals Council and was not before the ALJ. Plaintiff contends that the Appeals Council's analysis of the evidence, which was submitted to show disability prior to June 1, 2007, and consists of four pages total, was "flawed." Opening Brief, at 6. She does not contest the ALJ's review of the medical evidence.

1    Regulatory law provides that in reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 416.1470(b).

Plaintiff's argument is based on the assumption that the standards for rejecting medical opinions are the same for both the ALJ and the Appeals Council. Indeed, Plaintiff contends that the Appeals Council failed to set forth specific and legitimate reasons to reject the additional medical evidence. The Ninth Circuit has not specifically addressed this issue though cases within the Circuit suggest that the Appeals Council should be held to the same standard. *See Ramirez v. Shalala*, 8 F.3d 1449, 1453-54 (9th Cir.1993); *Luckett v. Astrue*, 2010 WL 3825703, *9 (E.D. Cal. 2010). It is worth noting, however, that in a majority of these cases, the Appeals Council failed to provide *any* reasons for rejecting the treating source. *Ramirez*, 8 F.3d at 1453 ("Neither the ALJ nor the Appeals Council gave any reason—let alone a 'specific, legitimate' reason" for disregarding the treating source's opinion); *Luckett*, 2010 WL 3825703, *9 ("The Appeals Council did not state, even in cursory terms, a specific reason for rejecting Dr. Davis's opinion.").

In its decision, the Appeals Council explained that it considered the evidence at issue but found no reason to review Plaintiff's action. It then explained the reasons behind its decision:

> All of these opinions are dated after the established onset date of June 1, 2007, found in the hearing decision of June 23, 2009. To the extent that these medical opinions suggested additional functional limitations in the period prior to June 1, 2007, they are not supported by appropriate clinical documentation and are inconsistent with more persuasive evidence, as cited in the hearing decision. . .The established onset date of June 1, 2007, is consistent with the persuasive testimony of medical expert Charles Agler, M.D. Moreover, the residual functional capacity found for the period prior to June 1, 2007, is supported by that testimony, as well as extensive findings and medical opinions of record.

AR 700.

The Appeals Council therefore cited three specific reasons for rejecting the new evidence. First, it noted that all of the opinions were dated after the established onset date of June 1, 2007.

AR 700.  For example, Dr. Forno's opinion was dated August 17, 2009, over two years after the established onset date.  Although Dr. Forno suggested disability "since June 2002 per records," the Appeals Council did not err in noting that the opinion was offered well after the period for which Plaintiff was attempting to establish disability.  An opinion cannot be disregarded solely on this basis, but as explained below, the Appeals Council offered additional reasons for rejecting Dr. Forno's opinion.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (reports containing observations made after the period of disability are relevant to assess disability and should not be disregarded solely on that basis).

As to the remaining two opinions, both were set forth after the onset date but neither gave an opinion as to Plaintiff's condition prior to that date.  Dr. Sahota and Dr. Gold submitted a letter dated June 12, 2007, and although they discussed treatment from 2004 through 2006, they opined that Plaintiff was not *presently* capable of work and would not be capable of work for the foreseeable *future*.  AR 745.  Similarly, Dr. Smith's October 19, 2009, set forth no RFC at all.  AR 705.

Nonetheless, the Appeals Council considered whether these opinions suggested additional limitations prior to June 1, 2007, and found that they did not.  The Appeals Council explained that the reports were not supported by appropriate clinical documentation.  Only Dr. Forno specifically suggested that Plaintiff could not work prior to June 1, 2007, but her one page questionnaire contained virtually no information related to her treatment of Plaintiff.  It does not state when she began treating Plaintiff, how often she treated her or when she last treated her.  Although Plaintiff characterizes Dr. Forno as a treating source, her relationship to Plaintiff is not evident from the questionnaire.

Plaintiff contends that Dr. Forno relied on her own clinical findings to support her opinion.  It is true that she listed "very tender both knees and to joints, flat affect, vague communication, obviously unable to hear normal conversation, coarse tremor of both hands" as objective findings, but there are no treatment notes or other explanations to put such findings into context.  AR 707.  For example, there is no indication when such findings were made or whether they were made on more than one occasion.  A brief and conclusionary form opinion which lacks

supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Finally, the Appeals Council found that the reports were "inconsistent with more persuasive evidence, as cited in the hearing decision." AR 700. The ALJ thoroughly examined the medical evidence and concluded that all of the opinions were "remarkably consistent" and well supported. AR 722. The Appeals Council also cited the testimony of medical expert Dr. Agler, who reviewed the record and concluded that Plaintiff could perform work prior to June 1, 2007. AR 700. As noted above, Plaintiff does not challenge the ALJ's analysis of the medical evidence. AR 722.

Based on the above, the Court concludes that the Appeals Council provided specific and legitimate reasons for rejecting the evidence before it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). The finding was supported by substantial evidence and was free of legal error.

B.    Medical Expert and Vocational Expert Testimony

Finally, Plaintiff argues that the testimony of medical expert Dr. Agler and the VE demonstrate that she cannot work. She contends that Dr. Agler determined that prior to June 1, 2007, Plaintiff was limited to simple instructions but could relate adequately to the public, co-workers and supervisors. According to Plaintiff, the VE testified that someone with such limitations could not work.

Plaintiff argues that the ALJ "said he accepted the ME's opinion and used it to fashion the entire decision." Opening Brief, at 8. Plaintiff suggests that the ALJ erred, then, in not explaining why he rejected Dr. Agler's limitation to "only simple instructions" when he found an RFC for simple and detailed work. Plaintiff's argument, however, is based on an incorrect reading of the hearing transcript. Plaintiff cites to page 1527 to support her argument that Dr. Agler limited Plaintiff to "only simple instructions," but Dr. Agler was reading from a report of Dr. Lampe rather than setting out his own limitations. AR 1526-1527.

Plaintiff is correct that the ALJ relied on Dr. Agler's overall finding that Plaintiff "was at minimum functioning at a marginal level and was not so impaired as to be incapable of performing substantial gainful activity prior" to June 1, 2007. AR 721. Indeed, the ME testified

that even her lowest GAP upon hospital admission "would not prevent some kind of simple SGA" and that for periods in between her hospitalizations, she was "functioning in a marginal manner that would not preclude SGA."  AR 1525.

In any event, both the ALJ and Appeals Council rejected the VE testimony upon which Plaintiff bases her argument, finding that it was inconsistent with the testimony of the prior two VEs.  AR 700, 722-723.  Plaintiff does not contest this finding.

The Court therefore finds that the ALJ's step 4 finding was supported by substantial evidence and free of legal error.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff EMILY RECTOR.

This Findings and Recommendation will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with this Findings and Recommendation, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 8, 2011**               /s/ **Dennis L. Beck**
                                             UNITED STATES MAGISTRATE JUDGE